ROBERTS et al. v. BURLESON.    (No. 104.)

(Court of Civil Appeals of Texas.    Eastland.
Feb. 18, 1926.)

**1. Mines and minerals ☞113.**

Oil well driller may file materialman's lien, though he agreed to turn over property free of all liens.

**2. Appeal and error ☞1050(1)—Permitting plaintiff to prove by defendant, in action on oil well drilling contract, that defendant and another were partners, held not prejudicial error.**

In action for balance due under oil well drilling contract, error, if any, in permitting plaintiff to prove by defendant that latter and another were partners *held* not prejudicial to defendant.

**3. Appeal and error ☞662(4)—Refusal to permit defendant to produce in evidence contract, admitted by petition and placed in evidence, held not error.**

Refusal to permit defendant to produce in evidence a contract, which plaintiff admitted in petition and which was placed in evidence as shown by statement of facts, *held* not error.

**4. Mines and minerals ☞109—Submission of issue in suit on oil well drilling contract, whether defendant accepted well as completed within contract when drilled to less than contract depth, held not error.**

In action for balance due under oil well drilling contract, submission of special issue whether defendant accepted or took over well as completed within contract when drilled to less than contract depth *held* not error.

Appeal from District Court, Eastland County; Elzo Been, Judge.

Action by D. W. Burleson against Geo. B. Roberts, individually and as trustee. Judgment for plaintiff, and defendant appeals. Affirmed.

J. D. Barker, of Cisco, for appellants.
Conner & McRae, of Eastland, for appellee.

LITTLER, J. D. W. Burleson, appellee herein, filed this suit against George B. Roberts, individually and as trustee, and set up a contract under which appellee was to drill a well for appellant, to the depth of 3,500 feet, alleging that the contract provided that, should the drilling of said well be stopped at a lesser depth than 3,500 feet and drilling resumed thereafter, then and in that event defendants promised to pay plaintiff the sum of $80 for each 24-hour day and $50 for each 12-hour day, that drilling was stopped by the defendants at a depth of 3,388 feet, and that the well thereby became a completed well, and that the defendants obligated and bound themselves thereby to pay plaintiff the sum of $11 per lineal foot up to that depth. Appellee further alleged that when said well was stopped he entered into a verbal agreement, by the terms of which appellee agreed to accept certain casing from well No. 1, which he did accept, at the price of $3,750.

Appellee alleged that appellants paid in money the sum of $28,000 in March, 1923, and $3,000 in June, 1923, and delivered the casing, of the value of $3,750, leaving a balance due at the time the well was closed down in the sum of $2,518, which appellant agreed to pay in units of stock at par value of $250 per unit.

Appellee further alleged in his original petition that at the time of the agreement the units of interest were of the reasonable market value of $250, but that at the time of the filing of said petition said units of interest were wholly worthless, and that the appellants failed and refused to deliver the units of interest as per the contract, but after said closedown at the depth of 3,388 feet, appellee alleges that he continued to drill under the contract for a certain number of days, aggregating the sum of $960, and that during the time he was closed down he was to receive the sum of $100 per day of 24 hours. Appellee sues for the sum of $600 cash advanced, and for one joint of 8¼" casing of the value of $20. Appellee also alleges that he filed a mechanic's, laborers', and contractors' lien against the land and certain material located thereon.

Appellants answered by general denial and pleaded the original contract under which the well was drilled, and specifically pleaded the provision made by article 15 of said contract, providing that the well was not to be a completed well if drilling was stopped, and that it was the duty of the appellee to continue drilling under the contract, and specially denied entering into an oral contract as alleged by the appellee in his original petition, and tendered to the appellee units of interest sufficient to pay the debt under the written contract under which the parties were operating, as it provided for by article 28 of the said contract, and filed a cross-action against plaintiff for certain personal property alleged to have been appropriated by plaintiff. Appellants specially excepted to that part of the plaintiff's petition wherein he sought to set up a contractor's lien.

The case was tried before a jury, and the court submitted the following special issues, which were answered by the jury as indicated.

"Special Issue No. 1: Did the defendant George B. Roberts stop the plaintiff, D. W. Burleson, from drilling the well on the Roberts-Murphy lease for the purpose of having the well shot? Answer Yes or No.
"Answer: Yes.
"Special Issue No. 2: Did George B. Roberts accept or take over from D. W. Burleson the well in issue as a completed well under the terms of the written contract before you when

it had been drilled to a depth of 3,368 feet? Answer Yes or No.

"Answer: Yes.

"Special Issue No. 3: Did George B. Roberts agree with D. W. Burleson that he could have the casing out of well No. 1 on the lease in question at an agreed price of $3,750? Answer Yes or No.

"Answer: Yes.

"Special Issue No. 4: If you have answered special issue No. 3 in the affirmative, you need not answer this question, but in the event you have answered it 'No,' then you will answer this question: What was the reasonable cash value of the four sets of casing at the time the same was taken possession of by D. W. Burleson? Answer in dollars and cents.

"Answer: ———.

"Special Issue No. 5: What was the reasonable cash value of the 2,000 feet of 2-inch water pipe appropriated by the plaintiff on or about July 1, 1923? Answer in dollars and cents.

"Answer: $200.

"Special Issue No. 6: What would be the reasonable value of the labor required to place said line back on the lease and connect same up in the condition in which it was at the time it was taken by the plaintiff? Answer in dollars and cents.

"Answer: $56.

"Special Issue No. 7: What was the reasonable cash value of two sets of tubing elevators and two wrenches in the tool box of D. W. Burleson on or about July 1, 1923? Answer in dollars and cents.

"Answer: $150.

"Special Issue No. 8: Did D. W. Burleson advance to George B. Roberts $600 in money, with the understanding and upon the promise of said Roberts that such sum would be repaid to him? Answer Yes or No.

"Answer: No."

The court rendered judgment in favor of the plaintiff in the sum of $9,462 and foreclosure of his materialmen's lien.

In connection with the foregoing verdict the court finds the following facts:

"That defendant George B. Roberts is trustee for the trust fund referred to in the written contract entered into by and between George D. Roberts, as trustee of the George B. Roberts trust fund, on the one hand, and D. W. Burleson on the other, on the 21st day of December, 1922; that said George B. Roberts, individually and George B. Roberts trust fund, have been cited to appear and answer this cause and have filed their answer herein; that by the terms of the written contract referred to, the defendants employed D. W. Burleson to drill a well for oil and gas on the following described tract of land upon which the defendants owned an oil and gas lease, 100 acres of land out of the S. W. ¼ of section 7, block 2, by virtue of land script No. 622, B. B. B. & C. R. R. Co. surveys in Eastland county, Texas; and that the said Burleson performed all of the obligations undertaken by him by the terms of the written contract referred to.

"The court further finds that the said D. W. Burleson furnished all of the material hereinafter referred to in connection with the foreclosure of a lien thereon, and also furnished all of the labor in utilizing the same in the drilling of said well; that the plaintiff, on, to wit,

the 14th day of July, 1923, filed his laborer's and materialman's lien upon the oil, gas, and mineral leasehold above referred to and all of the property situated thereon described as follows, to wit: 3,400 feet of 2-inch tubing; 3,400 feet of pumping rods; 2,300 feet of 6⅝-inch casing; 2,000 feet of 8¼-inch casing; 3,600 feet of $5^3/_{16}$-inch casing; 3,300 feet of 6⅝-inch casing; 2,300 feet of 8¼-inch casing; 4,000 feet of water and gas pipe line; four 500-barrel bolted steel tanks; two standard derricks—and that the plaintiff is entitled to the foreclosure of his laborers' and materialmen's lien upon the leasehold above described, and also all of the property thereon situated which has been enumerated herein.

"The court further finds that the plaintiff performed all of the labor and furnished all of the material as alleged in his petition, and that he is entitled to recover all of the items therein alleged, amounting to the sum of $9,608, save and except the sum of $600, which was determined against him by the verdict of the jury aforesaid; and that the defendants are entitled to a credit thereon under the verdict of the jury amounting to the sum of $406, leaving a balance due the plaintiff for $8,602; and that he is entitled to a judgment against the said George B. Roberts trust fund and George B. Roberts individually thereof, with 6 per cent. interest thereon since July 14, 1923."

Appellant bases his appeal upon five bills of exception:

[1] Exceptions 1 and 2 complain that the court committed error in overruling exception to that part of plaintiff's petition wherein it is alleged that plaintiff had filed a materialmen's lien against all material on said lease, appellant claiming that under the contract appellee was to deliver to appellant said property free of all liens. We conclude that this assignment is not well taken. It certainly cannot be contended that, even though appellee had agreed to turn the property over to appellants free of any and all liens, he would not be permitted to file a materialmen's lien to protect himself for material furnished and labor performed.

[2] Bill of exception No. 3 complains that the court erred in permitting appellee to prove by appellant that appellant and one Murphy were partners. Under the facts in this case we are unable to see how this could have prejudiced the rights of appellant, even though it was error, which we do not specifically hold; hence assignment No. 3 is overruled.

[3] Defendant's bill of exception No. 4 complains that the court erred in refusing to permit appellant to produce in evidence a certain contract, which would have disclosed all the parties who constituted the trustees for the Roberts trust fund, and would also have shown that the said Roberts had no authority to change or abrogate said written contract. Appellee in his petition admits a certain contract, and the same was placed in evidence as shown by the statement of facts;

therefore this assignment of error is overruled.

[4] Defendant's bill of exception No. A complains that the court erred in submitting to the jury special issue No. 2. Said exception is overruled.

We conclude that the evidence adduced upon the trial of this cause amply supports the findings of the jury and the said findings support the judgment rendered by the court.

The record discloses no reversible error; the judgment of the trial court is in all things affirmed.